410 So.2d 528 (1982)
STATE of Florida, Petitioner,
v.
Victor Vera VIGIL, Respondent.
No. 81-1009.
District Court of Appeal of Florida, Second District.
January 26, 1982.
Rehearing Denied February 26, 1982.
*529 Jim Smith, Atty. Gen., Tallahassee, and Robert J. Landry, Asst. Atty. Gen., Tampa, and James T. Russell, State Atty., and C. Marie King, Asst. State Atty., Clearwater, for petitioner.
A.R. Mander, III, of Greenfelder & Mander, P.A., Dade City, for respondent.
SCHEB, Chief Judge.
The state petitions for a writ of common law certiorari, contending that the trial court departed from the essential requirements of the law in ordering the release of Victor Vera Vigil after a jury found him not guilty of murder by reason of insanity. We grant the writ.
Vigil was indicted and tried by jury for first degree murder. After a jury found him not guilty by reason of insanity on April 16, 1981, the trial judge requested that counsel present the legal alternatives for disposition of the defendant at a hearing to be held the next day. At that hearing the state contended that Vigil met the criteria for involuntary hospitalization by order of the court. Defense counsel, on the other hand, argued that Vigil should be sent to the Human Development Center of Pasco, Inc., for evaluation. During this hearing the trial judge made the following statements:
THE COURT: Well, he's been, in effect, acquitted. Now, I would assume that by that order that the statute demands that I deliver him to HRS and that then they will make a decision as to whether or not he should be detained for evaluation or whether or not he can go wherever they place him.
Because it seems to me like under a situation like this that the statutes have taken the control from the Court and placed it in the hands of HRS until, perhaps, the defendant does not comply with whatever it is HRS hands down as a treatment plan.
... .
And were I to rely solely on my best judgment, I would do that which I outlined last night  apparently erroneously  that is, just keep this man as secure and tight as a bug until I could get a report from not only two, but perhaps three or four psychiatrists who I picked personally. But that isn't what the statute says, and I don't like it one darn bit.
The trial judge then entered an "Order for Emergency Evaluation," attaching two psychologists' reports which had been previously filed in the case, "each describing irrational behavior that indicates he may do harm to himself or others." Vigil was then taken to the Human Development Center for evaluation and the director of the center sent the following letter, dated April 20, to the trial judge:
A 90 minute evaluation was conducted at the Human Development Center on April 17, 1981. The findings were that he [Vigil] is not presently dangerous to himself or others due to mental illness, and is, therefore, not in need of psychiatric hospitalization.
It is recommended that Mr. Vigil be released from custody of the Pasco County Detention Center, and that he be encouraged to attend regular outpatient counseling with an outpatient alcohol specialist. This service can be provided for him here at the Human Development Center of Pasco.
After receiving this letter the trial judge advised the warden at the sheriff's office by letter that Vigil was entitled to be released from custody because of the recommendations of The Department of Health and Rehabilitative Services. In his letter the judge stated that "the custodial status of Mr. Vigil has, by statute, been subject to the discretion of HRS and its sub-agency, the Human Development Center of Pasco County."
On April 24 the state filed a motion to correct sentence. The state contended that under relevant statutes the court did have discretion to find Vigil "manifestly dangerous" and to involuntarily hospitalize him. The transcript of this hearing reveals some degree of ambiguity as to whether the trial judge exercised his discretion, or whether he thought he was bound by the prior recommendations *530 of the Human Development Center submitted to the court. It is clear, however, that the state pointed out the various alternatives that the court could consider. At the end of the hearing, the trial judge apparently concluded he had no discretion in the matter as he opined, "I don't believe the court has the alternatives." The court then denied the motion for correction of sentence, and the state filed this petition for common law certiorari.
The state argues that the various statutes governing disposition of persons acquitted by reason of insanity of criminal charges grant the court discretion to either: (1) discharge the defendant; (2) order outpatient treatment at a specific appropriate facility; or (3) commit the defendant to the Department of Health and Rehabilitative Services facilities for involuntary hospitalization.
Respondent Vigil agrees that the trial judge had this discretion. Indeed, a reading of the various statutes involved, although somewhat duplicative, indicates that it is the court's responsibility to determine if a defendant found not guilty by reason of insanity is "manifestly dangerous" and if not, to determine the appropriate alternative. See §§ 916.15, .16, Fla. Stat. (Supp. 1980); § 394.467, Fla. Stat. (1979); and Fla. R.Crim.P. 3.217.
While Vigil agrees with the above statement of the law, he takes issue with the state's contention that the trial judge did not properly follow the law. Further, he contends that the complete record shows that the trial judge properly exercised one of the legal alternatives available by discharging him, after first considering the results of the evaluation that he had ordered. There is some support for respondent's position in the transcripts of the two hearings mentioned herein. Yet, our reading of the entire transcripts of the two hearings, including the letters and excerpts quoted herein, convinces us that the trial judge concluded that he was bound by recommendation of the Human Development Center and, therefore, was not free to exercise his discretion by selecting one of the alternatives available.
Accordingly, we grant certiorari and remand to the trial court. The court shall make a determination as to whether Vigil is "manifestly dangerous." The court's determination should be made only after notice to the state and respondent, and at the hearing the court should consider the evidence from the respondent's trial, prior reports of psychologists in this case, and any relevant evidence presented by the state and the respondent at the new hearing. The trial judge may consider, but is not bound by, the prior evaluations submitted to the court, and should the court deem it necessary, he may appoint additional psychologists and psychiatrists.
If the trial judge concludes that Vigil is "manifestly dangerous," he shall then commit him to HRS for involuntary hospitalization. If, on the other hand, the trial judge concludes that Vigil is not manifestly dangerous, he should then exercise his discretion by either discharging him or ordering outpatient treatment at a specific appropriate facility.
GRIMES and CAMPBELL, JJ., concur.