453 So.2d 153 (1984)
Floyd Steve HUSK, Appellant,
v.
STATE of Florida, Appellee.
No. AV-77.
District Court of Appeal of Florida, First District.
July 18, 1984.
*154 Quentin T. Till, P.A., Jacksonville, for appellant.
Jim Smith, Atty. Gen., Andrea Smith Hillyer, Asst. Atty. Gen., for appellee.
MILLS, Judge.
Husk appeals from the trial court's order committing him to further involuntary hospitalization. He contends the order is not supported by a preponderance of the evidence; the trial court failed to consider alternatives to involuntary hospitalization; the trial court erred in appointing Doctors Sall and Larsen to re-examine him; and Section 916.15(1), Florida Statutes (1983), is unconstitutionally vague. We do not agree and affirm.
In 1981, Husk was charged with sexual battery and attempted first degree murder. At the ensuing trial, Doctors Sall, Larsen and McMahon testified that Husk was insane at the time of the offense and incompetent to stand trial. Doctors Miller, Mann, and Mullin testified that Husk was sane at the time of the offense and competent to stand trial. The jury found Husk not guilty by reason of insanity. Following that verdict, the trial court committed Husk to HRS pursuant to Rule 3.217, Fla. R.Cr.P.
Four months later, HRS reported to the circuit court in Duval County that Husk no longer met the criteria for involuntary hospitalization. Husk was subsequently returned to the Duval County Jail where, pursuant to a court order, he was examined by Doctors Sall and Larsen, two of the same psychiatrists who had testified at his trial that he was insane. Those two doctors later testified that Husk was still mentally ill, still met the criteria for involuntary hospitalization, was in need of alcohol and drug abuse treatment, was dangerous, and had a high potential for explosive violence to himself and others. On the basis of that testimony, the trial court entered an order on 15 October 1982 committing Husk to further involuntary hospitalization.
Husk appealed from that order, contending that the evidence was insufficient to support the trial court's finding that he was in need of further involuntary hospitalization and that the trial court erred in appointing Doctors Sall and Larsen to re-examine him. This court affirmed the order of 11 October 1983, finding that the evidence clearly showed that Husk was still mentally ill and, because of his illness, was manifestly dangerous to himself and others. The court further found that any objection to the appointment of Doctors Sall and Larsen had not been preserved for appellate review. Husk v. State, 438 So.2d 989 (Fla. 1st DCA 1983).
During the pendency of that appeal, HRS filed another report with the trial court, stating again that Husk no longer met the criteria for involuntary commitment. On 26 May 1983, the trial court ordered Husk returned again to Duval County for evaluation. Once again, this time over objection by Husk's attorney, the trial court appointed Doctors Sall and Larsen to evaluate Husk.
Dr. Sall testified that he would not change his diagnosis of paranoid schizophrenia except that he felt it was presently in remission. He said that Husk was probably still dangerous and that he would almost *155 certainly be dangerous if he stopped taking his medication or if he were to take alcohol or other mind-altering drugs. He also stated that Husk should remain in a treatment facility and that the safest alternative would be to put him in the state hospital.
Dr. Larsen stated that Husk is a danger to himself or other people, that at the present time Husk is pre-psychotic or potentially psychotic, and that he should definitely be sent to Chattahoochee.
The trial court also received testimony from Dr. Fjordbak, a psychiatrist on the staff at Florida State Hospital. He stated that Husk no longer met the criteria for involuntary hospitalization. He agreed that Husk was dangerous, but he did not feel that it was the result of any mental illness. He refused to recommend that Husk be released from the hospital. He recommended that Husk receive considerable ongoing structure, ongoing psychotherapy, and a closely supervised residence.
Various other testimony was also received, including that of Dr. Leano, another psychiatrist at Florida State Hospital. He stated that he had seen no signs that Husk would be a danger to himself or others and recommended that he be released from Chattahoochee.
After considering the evidence, the trial court on 7 September 1983 entered its order committing Husk once again to involuntary hospitalization.
The record contains clear and convincing evidence to support the trial court's determination that Husk meets the criteria for further involuntary hospitalization. Dr. Sall told the court that Husk was still a paranoid schizophrenic, that he would definitely be dangerous if medication ceased, and that he should remain in Chattahoochee. Dr. Larsen told the court that Husk is a danger to himself and to others and should be recommitted to Chattahoochee. Dr. Fjordbak told the court that Husk no longer met the criteria for involuntary hospitalization but refused to make a recommendation that he be released. Moreover, the alternative criteria in Section 394.467(1)(b)(4)(b) were met in this case. All of the experts agreed that Husk is dangerous. Doctors Sall and Larsen agreed that Husk is mentally ill. All of the experts recommended further hospitalization of some sort.
The record is clear that the trial court considered alternatives to placing Husk in Chattahoochee.
It is obvious from the language of Section 916.11(2) that the appointment of psychiatrists is within the discretion of the trial court. The experts appointed by a court to determine the mental compentency of Husk were independent; they were neither prosecution nor defense witnesses but were neutral experts working for the court. The trial court fully complied with Section 916.11(2) by appointing "a psychiatrist ... designated by the district mental health board."
Husk's argument is spurious that Section 916.15(1), Florida Statutes, which requires that the trial court find an acquittee "manifestly dangerous" before ordering involuntary hospitalization, is unconstitutional. Statutes are presumptively constitutional. Husk has failed to cite any legal authority to overcome that presumption.
AFFIRMED.
SHIVERS and WIGGINTON, JJ., concur.