ANSTEAD, Chief Judge.
This case involves an appeal from a denial of a motion by appellant, Gary G. Ric-ciardelli, to dismiss pending criminal charges pursuant to Florida Rule of Criminal Procedure 3.218(b) because of his continuing mental incompetency for more than five years. Ordinarily, the denial of a motion to dismiss would not be appealable because the issue could be raised after a disposition of the case on the merits. However, because of the determination that Ric-ciardelli remains incompetent to stand trial, the charges may never be decided on the merits, and without this review Ricciardelli would be effectively denied any review of the trial judge’s decision.[1]
Ricciardelli was charged with two counts of battery in 1977. Subsequently, he was found incompetent to stand trial and was committed on January 7, 1977, to a state psychiatric hospital. After remaining committed for five years Ricciardelli moved to dismiss the charges under Florida Rule of Criminal Procedure 3.213(b) which provides:
(b) If at any time after five years after determining a person incompetent to stand trial when charged with a felony or one year when charged with a misdemeanor, the court, after hearing, determines that the defendant remains incompetent to stand trial, that there is no substantial probability that the defendant will become mentally competent to stand trial in the foreseeable future and that the defendant does meet the criteria for involuntary hospitalization set forth by law, the court shall dismiss the charges against the defendant and commit the defendant to the Department of Health and Rehabilitative Services for involuntary hospitalization or residential services solely under the provisions of law, or may order that he receive outpatient treatment at any other facility or service on an outpatient basis subject to the provisions of those statutes. In the order of commitment, the judge shall order that the administrator of the facility notify the State Attorney of the committing circuit no less than 30 days prior to the anticipated date of release of the defendant.
Upon receipt of the motion to dismiss the trial court appointed two psychiatric experts to examine Ricciardelli. Both of the experts agreed with the treating physicians from the state hospital who had previously reported that appellant was not presently competent nor likely to return to competency. The doctors also agreed that the appellant met the criteria for permanent involuntary hospitalization. After receiving these opinions the trial court appointed an additional expert, Dr. Charles Saporito, who also judged that appellant was not competent to stand trial. However, Dr. Saporito suggested that by treating Ricciardelli with massive doses of psychotropic medications there would be a possibility of restoring him to competency. Subsequently, and upon sole reliance on Dr. Saporito’s testimony, the trial court denied appellant’s motion to dismiss. At issue is whether this testimony constitutes competent substantial evidence to support the court’s ruling.
In his testimony, Dr. Saporito assumed that Ricciardelli had either not been treated with the appropriate drugs or that such drugs had been administered to date in *201 inadequate dosages. The record, however, does not support these assumptions. The medical records reflect that Ricciardelli had received “practically ... every kind of medication that was available to the physicians.” Furthermore, the evidence indicates that at high dosages of some of the medications Ricciardelli had already begun developing dangerous side effects including low blood pressure, indicating his intolerence of high doses of such medication.[2] The record also reflects that the experimentally high dosages which Dr. Saporito recommended could only be administered under conditions of strict supervision. His views as to the potential side effects were that the possible benefits to be gained, i.e. a return to competency to stand trial, were worth the risk of harm to the criminal defendant. The treating physicians testified that not only would they not administer such high doses because of the dangerous and permanent side effects involved, but supervision over such dosages would be difficult if not impossible at a state institution. In short, the treating physicians testified that there was no real chance that Ricciardelli would ever receive the treatment recommended by Dr. Sapori-to.
In addition, we note that Dr. Sa-porito alluded only to the possibility of improvement if his recommended regime were instituted. However, the test under Rule 3.213(b) is whether there is a substantial probability that the defendant will become mentally competent to stand trial in the foreseeable future. In our view Dr. Saporito’s testimony does not rise to this level. In essence that testimony was based upon speculation as to the possibility of success of a highly experimental and unproven course of treatment that in reality would never be administered to Ricciardelli. A possibility of recovery under such circumstances is simply not sufficient under the explicit test set out in the rule. Accordingly, we believe the trial court erred in denying the motion to dismiss.
We note that the main concern of the trial court was with the wisdom of the rule itself. The court expressed a valid concern over allowing violent defendants to make repeated attacks on society and expressed concern that the defense was asking the court to endanger society “because of some silly rule.” The trial court expressed the view that it would be releasing Ricciardelli to “the borderline of society” with only the opinions of the hospital staff doctors to insure that he remain in custody. In other words, the trial court was legitimately concerned that Ricciardelli, a demonstrated violent and hostile individual, might “slip through a crack” and be returned to society while still in a violent state if his release was left up to the physicians. By continuing the charges the trial court felt that an additional judicial safeguard against this contingency would be maintained. This court, too, is concerned with averting attacks upon society, but we do not believe we can ignore the scheme set out in the rule to safeguard against such events.
Under the rule, should Ricciardelli later be found by his treating physicians to no longer meet the criteria for involuntary commitment, the prosecutor is free to refile the same charges. The rule explicitly provides that if charges against an involuntarily committed defendant are dismissed then the order of dismissal shall provide that the hospital administrator notify the state attorney at least 30 days before the defendant is to be released. This scheme places the responsibility on the state attorney to promptly determine if charges should be refiled. Rule 3.214(d) provides that the provisions of Rule 3.191 (speedy trial) do not apply to a defendant who is adjudged incompetent until (in the case of a defend *202 ant whose charges have been dismissed) the date the charges are again filed. The rule also tolls the statute of limitation in cases where a defendant has been judged incompetent and has had the charges dismissed without prejudice.
Hence, although the rule does not provide for judicial review of the subsequent release of such defendants, the rule clearly provides for a means of recharging the defendant along with all of the safeguards, including rearrest, that go along with recharging. Admittedly, the responsibility under this scheme rests with the state attorney and the physicians rather than the court. We, however, are not entitled to ignore such a scheme even if we agree that judicial review would be a better alternative.
In accord with the above, we believe the trial court was in error in denying the motion to dismiss. However, since a substantial time has passed since the last hearing and mindful of the concerns noted above, we remand this cause to the trial court with directions that the state be given an opportunity, within a period not to exceed 30 days from the date this decision becomes final, to advise the court if it has any evidence that the appellant’s status has materially changed since the last hearing. If such evidence is cited to the trial court then an additional hearing should be conducted promptly. Barring a good faith representation by the state of the existence of such evidence the trial court is directed to enter an order in accord with the terms of this opinion.
DOWNEY and GLICKSTEIN, JJ., concur.

. In a similar case the Second District accepted jurisdiction of a petition for writ of common law certiorari filed by the state to challenge the propriety of a trial court's order releasing a defendant who had been acquitted by reason of his insanity. State v. Vigil, 410 So.2d 528 (Fla. 2d DCA 1982).

. Dr. Saporito testified that he had no idea of the medication received by appellant in 1976, in 1977, and in his hospitalization from 1978 until the present. In fact, the only report Saporito saw that was relevant to appellant’s treatment during his hospitalizations was, by Saporito’s characterization, "a rather meaningless document that was devoid of any information.” Sa-porito then testified that he assumed that appellant’s medications were in insufficient dosages because he had "no reason to think otherwise."