# FIFTH DISTRICT COURT OF APPEAL
## STATE OF FLORIDA

———————————————

Case No. 5D2024-0663
LT Case No. 2020-CF-374

———————————————

MORRIS LEE REYNOLDS,

    Petitioner,

    v.

STATE OF FLORIDA and
DEPARTMENT OF CHILDREN
AND FAMILIES,

    Respondents.

———————————————

Petition for Writ of Habeas Corpus.
A Case of Original Jurisdiction.

Roseanne Eckert, of The Eckert Law Firm, PLLC, Orlando, for
Petitioner.

Ashley Moody, Attorney General, Tallahassee, and Stephen R.
Putnam, Jr., Assistant Attorney General, Daytona Beach, for
Respondent, State of Florida.

Logan Bartholomew, Assistant Regional Counsel, Orlando, for
Respondent, Department of Children and Families.

May 2, 2024

SOUD, J.

Petitioner Morris Lee Reynolds, who was involuntarily committed to the Department of Children and Families after being found not guilty by reason of insanity of first-degree murder, seeks a writ of habeas corpus from this Court commanding his release from the custody of DCF and ordering the trial court to consider outpatient treatment at an appropriate facility. We have jurisdiction. *See* Art. V, § 4(b)(3), Fla. Const.; Fla. R. App. P. 9.030(b)(3). As Petitioner remains mentally ill and, because of his mental illness, remains manifestly dangerous to himself or others, we deny the petition.

I.

In February 2020, the grand jury of Lake County, Florida returned an indictment charging Petitioner with the first-degree premeditated murder of Joyce Reynolds, his wife of approximately fifty-five years. During trial, evidence was presented that Petitioner shot his wife to death and then attempted to kill himself by "goring" and shooting himself. Ultimately, a jury found Petitioner not guilty by reason of insanity.

Thereafter, the trial court held a commitment hearing as contemplated by section 916.15(2), Florida Statutes (2023), and Florida Rule of Criminal Procedure 3.217 to consider whether to involuntarily commit Petitioner to the custody of DCF. Among other witnesses, two experts testified; one called by the State, and the other called by Petitioner. Both experts agreed Petitioner was mentally ill. Similarly, both experts testified that Petitioner's apparent stability at the time of the hearing was attributed to his compliance with medications, which resulted from the significant supervision and structure placed upon Petitioner while confined in the jail. In a less structured environment, both experts also believed Petitioner was at risk of non-compliance and that he would be manifestly dangerous to himself or others in such event. Specifically, Petitioner's own expert testified:

> What I did have concerns about is that the lack of stability in his medication and *not being monitored* had led to him having difficulty being at risk to himself and/or others and ultimately the homicide and his self-inflicted wounds. And in my opinion in forming my conclusions, if he were not to be in a

2

situation where he is assisted in medication compliance and monitored *such as he is being now* that he would be at risk for an episode in which, in fact, *he may become destabilized, and in that case, he would be manifestly at risk for harm to self or others.* And so while he is not presently, I did feel that *he would need to have that type of supervision so as not to be.*

Following the commitment hearing, the trial judge ultimately entered his written Amended Order of Commitment of Defendant Found Not Guilty by Reason of Insanity, wherein he made detailed factual findings. Based on those findings, the trial court concluded Petitioner met the statutory criteria for involuntary commitment as Petitioner suffered from mental illness (permanent major depressive disorder and post-traumatic stress disorder), and, because of mental illness, was manifestly dangerous to himself or others (though he was not exhibiting those signs at the time of the hearing because of his strictly supervised environment[1]). As a result, the trial court ordered Petitioner involuntarily committed to the custody of DCF.

This petition followed.

## II.

A petition seeking habeas relief is an appropriate vehicle to challenge the trial court's commitment of Reynolds following the verdict finding him not guilty by reason of insanity. *See Thurston v. Navarro*, 546 So. 2d 448, 449 (Fla. 4th DCA 1989); *see also MacNeil v. State*, 586 So. 2d 98, 99 (Fla. 5th DCA 1991) ("Habeas corpus is the traditional remedy used to obtain a person's release from an illegal order of involuntary commitment."). We review *de*

---

[1] The trial court's written order acknowledged that both experts agreed that at the time of the hearing, Petitioner did not pose a threat to himself or others. However, the trial court found that was "because [Petitioner] is in a strictly structured environment and his medication is closely monitored and administered. . . . [W]ithout this structured environment and medication regiment, [Petitioner] would pose a manifest threat to himself or others."

3

*novo* a trial court's legal conclusions concerning interpretation of a statute. We review a trial court's decision to commit a defendant for abuse of discretion. In doing so, we will not disturb a trial court's factual findings if the findings are supported by competent substantial evidence. *See Alcazar v. State*, 349 So. 3d 930, 932 (Fla. 3d DCA 2022).

In this case, the record before us provides ample support for the trial court's well-reasoned decision to involuntarily commit Reynolds to DCF.

## A.

All individuals are presumed sane. *See* § 775.027(1), Fla. Stat. As a result, insanity is an affirmative defense that must be raised by a defendant in accordance with Florida Rule of Criminal Procedure 3.216. At trial, a defendant carries the burden to prove by clear and convincing evidence that he was legally insane at the time the offense was committed. *See* § 775.027(2), Fla. Stat.; *Bourriague v. State*, 820 So. 2d 997, 998 (Fla. 1st DCA 2002); *see also* Fla. Std. Jury Instr. (Crim.) 3.6(a). To do so, a defendant must prove that he suffered from "a mental infirmity, disease, or defect[,]" and that because of such condition he did not know what he was doing or the consequences of his actions, or while knowing what he was doing and the resulting consequences, he did not know his conduct was wrong. *See* § 775.027(1), Fla. Stat. "If a defendant introduces evidence sufficient to create a reasonable doubt about sanity, the presumption of sanity vanishes and the state must prove the defendant's sanity beyond a reasonable doubt." *Bourriague*, 820 So. 2d at 998 (citing *Hall v. State*, 568 So. 2d 882, 885 (Fla. 1990)). If the state fails to do so, a defendant is to be acquitted. *Id.* (citing *Fisher v. State,* 506 So. 2d 1052, 1054 (Fla. 2d DCA 1987)).

A defendant found not guilty by reason of insanity "may be involuntarily committed . . . if the defendant has a mental illness[2]

---

[2] Pertinent here, "mental illness" is defined by the statute as "an impairment of the emotional processes that exercise conscious control of one's actions, or of the ability to perceive or understand reality, which impairment substantially interferes with the

4

and, because of the illness, is manifestly dangerous to himself or herself or others." § 916.15(2), Fla. Stat. Thus, the plain language of this statute requires a trial court to determine two things: is a defendant mentally ill; and, if so, is a defendant, as a result of the illness, manifestly dangerous to himself or others. *See id*. Within this statutory framework, a defendant found not guilty by reason of insanity must demonstrate that "the conditions that led to his acquittal have changed," and that he is either no longer mentally ill or no longer manifestly dangerous to himself or others. *See Tavares v State*, 871 So. 2d 974, 977 (Fla. 5th DCA 2004).

If the trial court determines that a defendant satisfies these criteria, the trial court has three options: (i) commit the defendant to the Department of Children and Families; (ii) order outpatient treatment at any other appropriate facility or service; or (iii) discharge the defendant. *See* Fla. R. Crim. P. 3.217(b). In making its determination, the trial court properly considers, *inter alia*, "the evidence obtained at trial and prior reports of psychologists, as well as any relevant evidence presented at the commitment hearing." *Tavares*, 871 So. 2d at 976 (citing *State v. Vigil*, 410 So. 2d 528, 530 (Fla. 2d DCA 1982)). If a trial judge determines it appropriate to commit a defendant, DCF is statutorily compelled to admit, retain, and treat such a defendant and provide periodic reports as required by the statute. *See* § 916.15(3)(c), Fla. Stat.; *see also* Fla. R. Crim. P. 3.218.

B.

In this case, there is competent substantial evidence supporting the trial court's conclusions that Reynolds is mentally ill, and because of that illness, manifestly dangerous to himself or others. Therefore, the trial court was well within its discretion to commit Reynolds.[3]

---

defendant's ability to meet the ordinary demands of living." § 916.106(14), Fla. Stat.

[3] As we noted in *Tavares*, commitment to DCF is not an alternate means of punishing Petitioner. *See Tavares*, 871 So. 2d at 977 ("An involuntary commitment of a defendant acquitted of a crime by reason of insanity is not imposed as a punishment."). Rather, commitment is an available (and important) measure to

5

The experts who testified at the commitment hearing both testified Reynolds was in fact mentally ill. As a result, the trial judge found Reynolds mentally ill, having been diagnosed with permanent major depressive disorder and post-traumatic stress disorder.

The focused dispute presented for our resolution is whether Reynolds is manifestly dangerous to himself or others. He is.

Whether Reynolds is mentally ill, and because of that, manifestly dangerous to himself or others, is a legal question for the courts to resolve, not simply a medical question. *See Hill v. State*, 358 So. 2d 190, 207 (Fla. 1st DCA 1978). In reaching its decision on commitment of an insane acquittee, a trial court is not limited to one snapshot of one moment in time (at the commitment hearing) in making its decision. Indeed, whether one is "[m]anifestly dangerous . . . is a mixed question of '(t)he likelihood of future misconduct, the type of misconduct to be expected, and its probable frequency. . . .'" *Id.* at 196 (quoting *Dixon v. Jacobs*, 427 F.2d 589, 595 n.17 (D.C. Cir. 1970)).[4]

Initially, as the trial court must evaluate, *inter alia*, the evidence presented at trial, *see Tavares*, 871 So. 2d at 976, we first note trial courts rightly consider the facts of the underlying case. Here, Petitioner was charged with murdering his wife of approximately fifty-five years and then "goring" and shooting

_____

protect the public. As a result, the safety of the public must be given full consideration. *See* § 916.15(2), Fla. Stat. (Petitioner "may be involuntarily committed . . . if [he] has a mental illness and, because of the illness, is manifestly dangerous to himself . . . *or others*.") (emphasis added).

[4] In *Hill*, the First District applied a likely-to-injure standard, which is no longer applicable in cases where a defendant is found not guilty by reason of insanity. As noted in *Thomas v. State*, 443 So. 2d 406, 407 (Fla. 4th DCA 1984), and discussed *supra*, section 916.15 makes clear the trial court must find that a defendant is mentally ill and, because of the illness, manifestly dangerous to himself or others.

6

himself in a failed suicide attempt. At trial, Petitioner did not dispute he shot and killed his wife; rather, he asserted the defense of insanity. There is hardly a case that more clearly demonstrates a manifest danger to *both* oneself and others. Thus, Petitioner's manifest danger in the past is self-evident.

That context is relevant to the trial court's consideration of whether Petitioner continues to be manifestly dangerous, and relatedly, the probability of future misconduct and the nature thereof. There is a plethora of evidence before the trial court to warrant Petitioner's commitment. At the commitment hearing both experts, including Petitioner's expert, agreed that without the substantial supervision and structure provided Petitioner in the county jail that ensures his compliance with medication and treatment, he would be a manifest danger to himself and others. Specifically, Petitioner's own expert testified that without such structure and supervision Petitioner "*may become destabilized, and in that case, he would be manifestly at risk for harm to self or others. . . . [H]e would need to have that type of supervision so as not to be* [manifestly dangerous]." This testimony is consistent with the State's expert who emphasized the importance and necessity of continuing such supervision to ensure Petitioner's stabilization and compliance with treatment so as to contain the manifest danger he poses to himself and others. The testimony of these two experts alone, as well as when considered together with the other evidence presented to the trial court, is sufficient to commit Reynolds to DCF. *See Husk v. State*, 453 So. 2d 153, 155 (Fla. 1st DCA 1984) (affirming commitment of insane acquittee where testimony was presented that the defendant "was still a paranoid schizophrenic, that he would definitely be dangerous if medication ceased, and that he should remain [involuntarily hospitalized]"). Therefore, the trial court correctly concluded that Petitioner is manifestly dangerous to himself or others.

To hold otherwise—to require Petitioner be released from the very structure and supervision that ensures his continued stability and mitigates the manifest danger he presents—would be contrary to the enactments of the Florida legislature designed to protect innocent members of our communities from such dangerous persons. Simply put, the law does not require, nor will it permit, gambling the safety of our citizens by releasing into alternative settings insane acquittees who, in the absence of proper and

7

needed supervision, are manifestly dangerous to themselves or others.

## III.

Accordingly, as Petitioner remains mentally ill and, because of the illness, is manifestly dangerous to himself or others, the petition for writ of habeas corpus is DENIED.

It is so ordered.

JAY and MACIVER, JJ., concur.

_____

***Not final until disposition of any timely and authorized motion under Fla. R. App. P. 9.330 or 9.331.***

_____